The Good morning, your honors. May it please the court, my name is David Bentivenia and I am appearing on behalf of the appellant, Mr. Anthony Romano. As you know, this is the second time this matter has come before you and it remains a case which is about exhaustion and the availability of administrative remedies. Previously this court concluded that it could not see how Mr. Romano, how his grievance procedures were unavailable to him if he was given notice of his transfer from Doc's custody to the custody of the Office of Mental Health, or OMH. Let me stop you there to be sure I understand your position, you're probably about the same, but your position is that he never, he was not required under the laws that existed at that time to be given notice and he wasn't in fact given notice. No, he didn't, there was confusion at the district court level, specifically it had been believed that he was transferred to OMH under correction law 402 subsection 3. That is a procedure which requires an individual who is going to be involuntarily committed that they receive five days notice and an opportunity to contest the placement at a hearing. So that was why this matter was originally remanded. I think I understand, but in any event, I want the answer that's very narrow and specific question, that is your position is, whatever the statute is, your position is that there was no notice required and there was no notice given. That's correct, Your Honor. Because he was ultimately the result of the additional discovery that was conducted. It was found that Mr. Romano was actually transferred to the Office of Mental Health under correction law 402 subsection 9, that's an alternate procedure which allows for the emergency hospitalization of a seriously mentally ill prisoner with no notice or opportunity. So there's some days were left in his kind of statute of limitations to bring this claim. That's correct. He was put in a position without notice in which he could not properly file that claim. Yes. But Judge Wolford thought that 13 days was a sufficient time for the plaintiff here to file his grievance. So let's talk about the first 13 days. Five, he was in the hospital, in the prison, to recover from his beating. He was recovering from injuries suffered during the assault. And then the next eight days, he was in OMH where they didn't allow him to have a pen. Isn't that correct? That's correct. He was still technically in doc's custody. He was in what's called an OMH unit within the Attica Correctional Facility. It's called observation. He was in an observation unit. As the additional discovery was attested to, he did not have a pen. He didn't have a paper. But staff were supposed to come through and verbally take agreements if he could submit one at a time. Did anyone come and take his complaint? I don't know if that was specifically raised in the discovery. I just believe it was that the opportunity was that staff do come through. After 13 days, he was transferred to CNY? Yes, he was transferred to CNY PC. And then he couldn't file a grievance while he was in CNY? That's correct. At the time, docs interpreted its grievance procedures such that when someone, when an incarcerated person is in the custody of an outside agency, they won't accept grievances while they're in outside custody. So even though he had 21 days per regulation, he only had 13 days? Yes. And he was disabled for a part of that time? He only had 13 days. And after that point, we would submit his- That the regulation was changed to allow an inmate under OMH custody to file a grievance? That's true, Your Honor. My understanding is the wording of the regulations didn't change, but docs' interpretation of it has changed such that they now, they will now accept grievances from individuals who are in an outside agency. They just have to be submitted or mailed to- So they changed it after Mr. Romano- After this occurred. So the problem that your client faces and faced is going forward. It still applies to your client, but it wouldn't apply to anybody who's in a similar situation today. It would still apply to him, yes. This exact situation could not happen anymore. No, no, it did apply to him. Yeah, yes, but you are correct. This exact series of events could not happen again. So the precedential effect of what we hold here isn't, it's important to your client what we hold, but it doesn't have a whole lot of precedential effect. I guess, not that it matters, technically. But it doesn't have much precedential effect since the law's been changed. And how's the power of persuasion? At least not to this specific situation regarding OMH. I would submit it could still have precedential effect in relation to summarily cutting off grievance periods without giving an incarcerated person notice that the period's going to be terminated. Right. And I guess maybe you could help us out with that. Let's assume that we're sympathetic for the moment to the proposition that your client was deprived of something significant that may have made the transfer to OMH. But how do we avoid essentially resurrecting what Ross says not to resurrect, a discretionary regime in which we look at all the circumstances? How would you articulate the rule that says this is what happened? I mean, I could ask particulars. Would it be the same if he were transferred out on the 20th day? Would it be the same if he'd been transferred to the hospital and it was more difficult, not to OMH, but transferred to the infirmary and more difficult to file a complaint because he had to wait for somebody to come by and they only came by twice? Would those also fall within what we write? Help me understand that. I think that's where the issue of notice becomes critical to this point. Because as I believe the defendants pointed out in their brief, ordinarily individuals do bear the burden or the risk of delay in waiting to the end of a deadline. That's why I think notice is critical in this instance because Mr. Romano, or others in situations where a grievance period might be cut off, there has to be notice that they're going to lose the period. Otherwise, individuals should be entitled to rely on the deadline period they've been given. I keep thinking just as an example what happened in this court on 9-11 when all of a sudden the ability, somebody had 30 days to file a document in this court, 30 days, and after 20 days 9-11 happens. Therefore, there can't be a deadline. I suppose under those circumstances, it's not enough to say, well, you had the first 11 days or 15 days. Lawyers always file at 11.59 p.m. on the date that's there. This somehow seems to me to be similar to that. If I'm understanding your point, Your Honor, and I apologize if I'm not. No, I apologize. I think a deadline should be a deadline, and it's incorrect, as I would argue the defendants have postulated in their papers, that deadlines can be broken so long as some as-yet-undefined reasonable period has passed. I mean, how do we define, well, you had enough time. But you never say that to a lawyer, saying, well, you had enough time. You say you had until 11.59 on such and such a day. That's correct, Your Honor. Counsel, I want to ask you one more substantive question. The extent of Mr. Romano's injuries is not in the record, isn't that correct? His physical injuries? Yes. No, they are not. In Rucker v. Griffin, where we held that an administrative remedy may be unavailable when an inmate fails to file within the allowable time because of his medical condition, we can't draw that conclusion here because we don't know what his injuries were. Isn't that correct? Not in relation to his physical, his medical injuries, although I would just note he did state that he did have a fractured jaw. But I would submit the situation is similar to Rucker in that his mental health state was so deteriorated that the situation is similar where the grievance process became effectively unavailable to him based on the substantial treatment he needed. I mean, he was, as the discovery papers note, I mean, he was in an extremely delusional state of mind and required emergency involuntary psychiatric hospitalization. I mean, this is not a light amount of treatment. Thank you. If there are no further questions, then I will save the rest of my time for rebuttal. Thank you. Good morning, your honors. We acknowledge that the Department of Corrections has since changed its interpretation of the rules, but what that leaves us is a case that really is all about precedent because there are competing proposals as to how to approach what to do with days 1 through 13. We submit that in a case where a plaintiff has had his deadline, he can't complete the grievance process before the deadline elapses, that Ross and its progeny require in its availability analysis for court to look as a case-specific factual matter, was the process available to that plaintiff beforehand? We envision- Well, he shouldn't be able to wait until the time limit has run. What you do in your practice of law all the time, you wait until it runs and you count on it being allowed to run, and then something happens and you can't do it. And you're saying, well, you could have done it. Well, your honor, Ross is a game changer here. Ross has articulated a narrow view of availability. It defines that term simply as capable of use to obtain some manner of relief. This court last year in Greenhaven Society of Friends elaborates that it affords only the possibility of relief and describes it as a low bar. Now, the way we see this working is something of a sliding scale. So if a plaintiff is transferred out of Doc's custody, say, like the day after the grievable incident, that plaintiff is going to have a much stronger case than if he was transferred out on the day of the deadline. And we understand that in some cases where a plaintiff might not be able to articulate that the process was factually unavailable to him that might create a result that a judge could consider rather harsh. However, Ross, on page 641 of the decision, says that the PLRA prevents a court from deciding that exhaustion would be unjust or inappropriate simply based on equitable considerations. The question is, could he have submitted a grievance? Is a statutory deadline an equitable consideration? Excuse me, I couldn't. How is a statutory deadline of 21 days an equitable consideration? Well, when you consider the use of notice, as Romano discusses it, he's saying that the transfer without notice is not keeping him from submitting a grievance during days 1 through 13. What he is saying is that due to the lack of notice, it was fair or just that he didn't submit a grievance during that period. And I submit to you, Your Honor, that there is a logical distinction. So in my example, if somebody was 10 days away from a deadline for filing a brief, and 9-11 happened, and therefore he hadn't or she hadn't filed a document, even though there were 10 days left, it's too bad. They had 20 days to do it, and too bad. The distinction in your hypothetical, Your Honor, is the existence of Ross. The rules that you're articulating allow some leeway. This court, as a matter of discretion, could say that that's an extenuating circumstance. Ross asks only, was the process available to the inmate? So in a situation like that, if the situation is something where nobody is to blame, and we're not saying that Romano is to blame for the mental decompensation that led to his transfer. We're saying that nobody is to blame, and when nobody is to blame, Congress has now put its thumb on the scale and said that if that process was available beforehand, then the inmate is obligated to use that process, and that anything else results in- The only way to really be safe under your reading is in the first or second days to file it, because who knows what's going to happen afterwards. Well, Your Honor, anybody who's been subject to a deadline knows that unexpected events happen, and I think this is a situation- So you file your brief 10 days early because unexpected events may happen. Indeed, Your Honor, if we were to miss the deadline, we would have to come pleading to the court and say, please give us a break, and if this court wanted, it could deny that and say, we're not going to accept your brief at deadline to deadline. I may be sympathetic to the argument if you're saying, okay, someone had 21 days. They can't say, oh, I want four days to be told because I had a horrible cold and couldn't work during that period, and maybe I'd even be sympathetic if on the 17th day someone fell ill and said, you know, I really was quite ill for those three days, and those are the three days I'd set aside, and that's why I blew the deadline. But here, the state-I mean, a process seems rather opaque if in the middle of it, the state can transfer you to another facility. Granted, there's a medical emergency. They have to be transferred, but then the state says you can no longer use the rest of your time. You can't follow a grievance from that other facility, and you had no notice. I mean, you could have been working diligently on the grievance secure in the knowledge that you had 21 days, and the state cuts off the time. Well, Your Honor, we respectfully disagree with the notion that the state cuts off the time here. Well, didn't you transfer him to OMH where he couldn't file a grievance? We did, Your Honor. But didn't you cut off the time? No, Your Honor. We transferred him pursuant to state law that said we had to transfer him. There were two OMH doctors who examined him. Let's say you had a legitimate reason to transfer him to OMH, but didn't you, as Judge Livingston asked, cut off the time from the moment you transferred him? No, Your Honor. Tell me why not. I'm just- Because even though we're the ones who physically put him into the van to OMH, because of the operation of state law, we are a passive player here. We are not transferring him out of some kind of whim. We're certainly not thwarting. I would agree with you, Your Honor, that if this were a case where we transferred him certainly with an intent to cut off his time, that that would be different. But what's happening here is not that we cut off anything. What happens, the 21-day deadline was and remained in place. An unexpected event happened that prevented Mr. Romano from complying with that deadline. We were not the impetus for that. We were passive. What was the impetus for cutting it off at 13? I mean, I understand you saying we didn't do anything bad, and Mr. Romano did nothing bad, but yet he stuck with 13 days, five of which he was in intensive care, and he lost his opportunity to file this grievance. Tell me what's wrong about that. Tell me why my formulation is wrong. We disagree with the proposition that his time was cut off to begin with. He always had 21 days. Circumstances beyond his control prevented him from complying. They were circumstances beyond anybody's control. We would analogize it to if on day 13 he had a heart attack and we had to put him into the emergency room. We wouldn't be blameworthy there, and nobody's cutting off his time. The notion of cutting off implies that somebody acted adversely to him, and we didn't act adversely to him. His mental decompensation happens, and it's not something that he anticipates. It's not something that we anticipate. But if he had been able to file it, if he had filed a complaint from OMH, it wouldn't have been accepted. That's correct, Your Honor. We don't deny that. He tried, actually, but they wouldn't accept it because he was not in the facility where the grievance arose. That's also correct, but in addition, it's correct that he didn't try until long after even the 45-day deadline had expired. So it's not like he immediately went to OMH and tried to submit a grievance and was told you're jurisdictionally barred. If we assume for the moment that we disagree with your position as to this case, how would you articulate the rule as to why Mr. Romano might be entitled to relief, but this is not a reopening of the special circumstances? I'm not aware of any way, Your Honor, that Mr. Romano could obtain relief on his analytical approach that wouldn't revive special circumstances because what he's asking this court to do is not determine whether he could not submit a grievance, but whether it is justified that he did not. That doesn't just apply to transfers, Your Honor. That would apply to any reason why a person's deadline could be cut short. If those cold examples, for instance, that you were giving as a hypothetical, an inmate would come in and ask the court to acknowledge I was really sick as of day 17. That justifies it because that's a good reason why I didn't submit a grievance beforehand. Perhaps one could distinguish between a coma and a cold, right? To file complete inability, complete cutoff, and anything that would make it somewhat harder to file a complaint within the given period. But even the process of asking the court to draw that distinction would be a resurrection of special circumstances if the situation is such that the process was available to them beforehand because the court is now asking itself regardless of whether this plaintiff could submit a grievance during days 1 through 13, days 1 through 17, whatever it might be, does this plaintiff have a good reason for why they didn't? And that is an equitable consideration. Every time you're asked to do that, it would put you back in the business of special circumstances and it would apply beyond the prospect of this transfer. I would submit that Mr. Romano's alternative argument actually demonstrates the workability of the case-specific approach that we're advocating for. He says that during days 1 through 13, he is factually unable to submit a grievance for physical and medical reasons. He is showing exactly the kind of argument that inmates should make under this situation. We disagree that the record supports that argument. In fact, this court in the first appeal, I believe it's page 86 of the appendix of the first footnote, says that there's no question of fact whether he was capable of submitting a grievance during those 13 days. We also disagree that the physician reports are reason to revisit or to reverse that decision because they're probative only of serious risk of harm. That's the standard under Correction Law 402. They don't necessarily indicate that he lacks mental capacity to submit a grievance and what we're missing there is something from Romano himself. There have now been two opportunities for summary judgment where Romano could have put in an affidavit saying, this is what I was experiencing during days 1 and 13 and presumably in conjunction with those physician reports, that would present a fairly strong case, but that time has now passed. So we disagree with Romano's position as an alternative factual matter, but that is the analysis that this court should be undertaking and we submit that this is something that's eminently workable. In the instances where an inmate is demonstrably unable to meet a deadline before that deadline expires, the inmate can put in an affidavit explaining, in the case of a transfer, we'll stick with a transfer, so between days 1 through 5, I was in shoe and the staff that are supposed to come, they just didn't come that day. We would have an opportunity to rebut that, maybe a staff member did come that day, we could say that, but if we can't, he would be excused. In that sense, if I could just point out the Rucker case that you had mentioned, Judge Pooler, Rucker is completely consistent with our position. Well, they had medical records. They had full medical records in that case. We don't have that here, as I established. They did, but more importantly, Your Honor, in Rucker, the entire five-day period, there the deadline was only five days, but during that entire period, there was no doubt that the inmate was medically incapacitated based on those medical records. And so if we had a similar kind of showing here, that for 13 days, his injuries in the infirmary for five days and then his mental health decompensation for the remaining eight days rendered him incapable of filing a grievance, we would have a different outcome. The fact that the state rendered him incapable doesn't count? Your Honor, we disagreed that it was the state that rendered him incapable. Mr. Romano had a mental health breakdown. Doctors examined him as they were obligated under statute. Frankly, if we had not transferred him to OMH custody, we might have gotten in trouble for that. When the doctors come in and say Mr. Romano needs inpatient care and treatment, the correction law 402 subsection 9 says the superintendent shall deliver him to the custody of the hospital. So we respectfully disagree with the proposition that we actively played a role. We're not suggesting that they transferred him in order to make sure he couldn't file his complaint. And that's what you're doing. It's kind of, of course, if the statute requires them to, as it very well might have and should have, if the statute required him to be moved, that's fine. Then the question is, therefore, what is the effect on the statute of limitations? And our argument is that under Ross, Ross has a pretty straightforward definition of what's available. And if the inmate was capable of using this process. And here we have a record that- At any time. At any time that he was given. So if he has 13 days where he could submit a grievance- No, he wasn't given 13 days. He was given 21 days or whatever it was. But circumstances, but if he was capable of submitting the grievance, then he was under an obligation to submit the grievance. And he bears the risk of being rendered incapacitated later on. It's no different. It's no different, Your Honor, than if he suffers an accident on day 13. We would take the exact same position. If he had fallen down a flight of stairs on day 13, that certainly would render him incapable of filing from day 13 onwards. I don't mean to beat this to death, but the question is, what would happen if you pushed him down? If we pushed him down the stairs, absolutely he would be excused. That would be a case of thwarting. I think Ross is fairly clear on that. And that's why I'm really pressing this point, Your Honor, to demonstrate that not only is it not thwarting, but that it really is no different than a situation where an inmate has an accident. The fact that the state played some kind of role in the transfer here should be immaterial because the state wasn't acting based on a choice that it could have made. Even if we were to assume that thwarting doesn't require something of a mens rea, it doesn't require the person to know that there's a grievance in the works. But you could have made the choice to say we'll accept, as you now have, we'll accept grievances after your transfer within the 21-day period from another facility. I suppose that's true, Your Honor. That's an interpretation of the regulations as given. But at the time, it's undisputed that this was the interpretation, and that was the rule. Everybody understood the rule. And that's why we remain of the position that the inmate here, Mr. Romano, has to bear the risk. As I said previously- Bear the risk of getting beaten up? Well, that goes to the substance of the claim, and it's well-established law at this stage that excessive force is grievable. And if you don't exhaust the process for excessive force, the case can be dismissed. Now, if they had beaten him up so badly and we had a factual showing that he was just incapable of writing out a grievance and there was nobody there to whom he could dictate a grievance, then sure, we agree that medical incapacity would constitute a fourth exception under Ross, where the process would be as a factual matter unavailable. Unavailable, where the process would be unavailable. That's correct. But here we have a situation where we know 13 days, and the problem with Mr. Romano's rule is that it would have this court hold as a matter of law that if one second of the grievance period is taken from an inmate, that the whole process would be unavailable. It wouldn't matter if the deadline was 21 days. It wouldn't matter if the deadline was one year or five years. This court would have to ignore the entire abundance of time beforehand where it could have been abundantly possible for this inmate to pursue the grievance process, or perhaps even complete the grievance process, but for that one second where it was removed from them. And we submit that that rule is both unrealistic and not a faithful reading of Ross. Thank you, Your Honor. We'll hear with Adam. Your Honors, I'd just like to return to this discussion of Ross. Ross does make clear that administrative remedies are unavailable when a procedure acts as a dead end. Here, Mr. Romano, his window was cut off. It was cut off after 13 days where he could not submit a grievance. It was cut off for all practical purposes. Docs would not accept a grievance had he submitted one while in OMH custody. The one he did try to submit was admittedly late. However, it was unaccepted because he was in OMH custody. Moreover, even if he had submitted a grievance in time, because he was in OMH custody, he couldn't have appealed it. There was no way he could have exhausted it. His procedures were cut off. They had become a dead end by his transfer to an outside agency where Docs at the time said it would not accept grievances. Counsel, what remedy do you seek here? For Mr. Romano? Yes. That he be excused from exhausting. Moreover, well- What kind of a deadline would you propose? I mean, we have the whole statutory scheme that we're not free to ignore. So he's excused from exhausting because it became impossible. So what kind of a deadline does he get? He should have the full- Does he get the balance of 21 minus 13 to file a grievance now? He should have had the full 21 days, Your Honor. To the extent that the defendants like to paint Mr. Romano as an individual who just should have borne the risk of waiting, I would like to point out that Mr. Romano's situation is readily distinguishable from all the examples given in defendant's brief. Mr. Romano was not part of a group of incarcerated persons who believed they were part of a class and didn't need to grieve at all. He wasn't someone who filed grievances and then just chose not to appeal them. Finally, he wasn't someone who was in local custody post-sentencing where the risk of transfer out of that local custody was imminent and obvious. Mr. Romano's situation was that he had no reason to know that he wouldn't have had the full 21 days. And you're claiming he was diligent in the time he had. I think the issue of his mental condition is important in that regard. And I know it wasn't part of this court's initial remand order, but I think the defendant's discovery documents make abundantly clear the extent of his debilitated mental state. I mean, I don't want to belabor the point because the details are somewhat graphic, but, you know, he was delusional. He believed that the state OSI had implanted chips in his brain so they could monitor his thoughts. I mean, this was not an individual in the right state of mind, even in the 13 days prior to his transfer. Nowadays, that's shared by about 20 percent of the American population. I don't have comment on that, Your Honor. But in sum, I would just like to point out that the situation Mr. Romano faced isn't one where he just waited and didn't grieve because, oh, I'll just put it off. I mean, he had no reason to know he wouldn't have the full 21-day period. And that's why I believe this issue of notice is critical. I have nothing further for no other questions from the panel. Thank you. Thank you. Thank you both. Nicely argued. And we will take the matter under advisement.